UNITED STATES DISTRICT COURT                                    ECF Case
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PAUL MOSCARELLO,

                      Plaintiff,              Civil Case No.: 06 Civ. 5250 (KMK)

          -against-                 **PLAINTIFF'S STATEMENT
                                            PURSUANT TO LOCAL CIVIL
                                            RULE 56.1(b)**

MALCOLM PIRNIE, INC.,

                      Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

       Pursuant to Rule 56.1(b) of the Local Civil Rules of the Southern District of New York,

plaintiff submits the following Statement of Material Facts as to Which There Exist Genuine Issues

to be Tried:

**Counter-Statement Corresponding to Defendant's Rule 56.1 Statement**

     1.      Undisputed.

     2.      Undisputed.

     3.      Undisputed.

     4.      Undisputed.

     5.      Undisputed.

     6.      Undisputed.

     7.      Undisputed.

     8.      Undisputed.

     9.      Undisputed.

    10.      Undisputed, except that:

(a)      Two of Ms. Molnar's promotions occurred during the period that Plaintiff worked

directly for Ms. Molnar. Affidavit of Paul Moscarello, sworn to March 11, 2008 ("Moscarello Aff."), ¶ 17.

(b)     The success that the group had with respect to the incurred cost reports was believed to be something that contributed to Ms. Molnar's promotion. Deposition of Gerald Rohrman, dated July 18, 2007 ("Rohrman Dep."), annexed to the Affidavit of William D. Frumkin, sworn to March 11, 2008 ("Frumkin Aff.") as Exh. "1," pp.69:15 - 70:14.

11.     Undisputed.

12.     Undisputed.

13.     Undisputed, except that Plaintiff's job requirements and expectations changed shortly thereafter.  Molnar Decl., Exh. "A," Personnel Requisition, p. D000000400-01.

14.     Disputed:

(a)     The reports may have been timely filed but Pirnie's methodology was viewed unfavorably by government auditors.  Moscarello Aff., ¶ 4; Rohrman Dep., pp. 9:23 - 11:14.

(b)     Defendant was not up to date in submitting their yearly overhead reports and was at least six to seven years behind. Rohrman Dep. pp. 56:5 - 59:10.

(c)     Defendant could have been in danger of losing its opportunity to bid on projects in the absence of having those overhead rates straightened out. Rohrman Dep. p. 62:15-20.

15.     Disputed. After the many years required to resubmit the reports in acceptable form, government auditors compared them to the estimated rates they had been using and monetary

2

adjustments were made, sometimes favorable to Defendant and sometimes not. Moscarello Aff., ¶¶ 3-4.

16.    Undisputed.

17.    Disputed.  Plaintiff had responsibilities in addition to the Incurred Cost Report. Deposition of Susan Molnar, dated May 15-16, 2007, ("Molnar Dep.") annexed to the Frumkin Aff. as "Exh. 2," pp. 67:23 - 68:1-10; Molnar Decl. Exh., "A."

18.    Undisputed.

19.    Undisputed.

20.    Undisputed.

21.    Undisputed.

22.    Undisputed.

23.    Undisputed.

24.    Undisputed.

25.    Disputed:

(a)    Plaintiff did not inform Ms. Molnar regarding his wife's disability prior to October 2003.  Deposition of Paul Moscarello, dated June 14, 2007 ("Moscarello Dep.") annexed to the Frumkin Aff. as Exh. "3," pp. 46:13-47:7.

(b)    When asked what she remembered about Paul telling her about taking his wife to the doctor, Ms. Molnar responded: "The same thing he always told me throughout. He would tell me...and this is you know, another clear indication it was always the day before or typically the day before and he just

said I got to take her for a checkup." Molnar Dep. p. 387:21-388:24.

26.     Undisputed.

27.     Disputed. Ms. Molnar did not know about Plaintiff's wife's condition before plaintiff was hired:

    (a)     Ms. Molnar claims that before plaintiff was hired, Gerry Rohrman simply volunteered to her that Plaintiff's wife had a "brain tumor or something," but she cannot remember precisely what was said. Molnar Dep. pp. 183-184:19, 186:9-11.

    (b)     Mr. Rohrman did not recall saying anything to Ms. Molnar about Plaintiff's wife before Plaintiff was hired. Rohrman Dep. pp. 33:13 - 35:11.

    (c)     Mr. Rohrman further testified that it would be out of character for him to have brought the subject up. "That's why I say, I don't recall saying it" Rohrman Dep. p 38:1-21.

28.     Disputed.

    (a)     *See* ¶ 27.

    (b)     Plaintiff did not discuss his wife's condition or treatment with Ms. Molnar until October 2003. Moscarello Dep., pp. 46:13-47:7.

    (c)     Ms. Molnar repeatedly testified she knew Plaintiff was taking his wife for "checkups" and not for cancer treatment. Molnar Dep. pp. 199:8-200:19.

29.     Disputed. Ms. Molnar could not have thought prior to October 2003 that the cancer was ongoing. See ¶¶ 27-28.

4

30.   Disputed:

    (a)    Plaintiff received two Performance Evaluations in Year 2001, the first in April 2001, marking his first complete year. Molnar Decl., Exh. "I," D000000119-122. The second Evaluation in 2001 was the regular review cycle in November of 2001. Molnar Decl., Exh. "C," D000000113-117.

    (b)    On Plaintiff's first Performance Evaluation, Ms. Molnar rated Plaintiff higher than he rated himself, 4.2 vs. 4. Ms. Molnar gave him the perfect 5 rating in the category of Process Orientation/Improvement  Molnar Decl., Exh. "I," D000000122.

    (c)    The self evaluations figures from 2001 (two) thru 2003 are 4, 5, 4.74, and 4.4 for an average of 4.53.  Reduction of his self-assessment to a number less than a perfect "5" is not a reflection of self-criticism by Plaintiff. Moscarello Aff ¶ 21.

    (d)    The 2003 Employee Partnership Plan & Evaluation (November 2003) was written one month after Plaintiff informed Ms. Molnar of his wife's condition. Molnar Decl., Exh. "E," D000000091-101.

    (e)    Plaintiff's self assessment rating reduction on his 2004 Employee Partnership Plan & Evaluation was made to placate Ms. Molnar, who informed him that too great a disparity between their assessments would create a problem with the review committee. Molnar Decl., Exh. "F,"; Moscarello Aff., ¶42. Moscarello Dep. P. 152:16-21.

31.  Disputed:

(a)  From 2001 to 2002, Mr. Moscarello's merit raise increased from 2.9% for his 2001 performance (Supervisor Rating of 4.6), to 3.57% for his 2002 performance (based on Supervisor Rating of 3.5).  Molnar Exhs, "C," p. D000000117; "D," p. D000000111; Exh. "H," p. D000000077.

32.  Disputed:

(a)  When Plaintiff was hired to a permanent position, the range was from $49,300 to $73,900. Molnar Decl., Exh. "A."

(b)  When discussed between Plaintiff and Ms. Molnar, she always related to him that he was near the high end of his salary range, and that those employees receive smaller increases because of the cap. Moscarello Aff. ¶ 10.

33.  Disputed:

(a)  The evaluation was signed and dated November 11, 2005 (Friday), not "late November 2005." Her boss, Vice President Bob Belitz, also signed the document on November 11, 2005. Molnar Decl., Exh. "G," p. D000000147.

(b)  Plaintiff's performance had materially improved, as evidenced by the recommendation that he receive a merit increase and the statement by Ms. Molnar that "Paul has improved his performance over last year." *Id.*; Molnar Decl., Exh. "X," Preliminary Salary Recommendation for 2006, p. D000000478.

(c)  Intervening between the signing of the evaluation and salary recommendation were the events of November 13, 2005 (Sunday), wherein Plaintiff's wife was

rushed to the hospital emergency room twice in one day, the second time by ambulance, semi-conscious and in unbearable and unrelenting pain. He remained with her until the early hours of Monday morning. Moscarello Dep. pp. 172:25 - 174:18.

(d)     In the morning on Monday, November, 14 2005, Plaintiff phoned Ms. Molnar at work to report he would be in late because he had been with his wife all night in the emergency room. Molnar Dep. p. 340:9-15; Moscarello Dep. p. 174:12-18.

(e)     When he arrived at work a little later than usual on Monday, November, 14 2005, he immediately went to Ms. Molnar's cubicle and described in detail the events of the preceding hours. He also told Ms. Molnar of his definite need for Family Medical Leave to care for his now practically incapacitated wife and to bring her for further testing to see if the brain cancer had spread to her spine. Moscarello Dep. pp. 174:12 - 177:20;

(f)     At some point during the remainder of this week Tuesday November 15, 2005 - Sunday November 20, 2005, Ms. Molnar decided to withdraw Plaintiff's Evaluation and fire him. Ms. Molnar is unable to identify the day she withdrew the evaluation. Molnar Dep. pp. 316:14 - 317:5; 323:19 - 324:7; 345:15 - 350:10.

(g)     Only seven days after Plaintiff's request for Family Leave, on Monday, November 21, 2005, Ms. Molnar met with Employee Resources Manager, Henry Chapman, in order to finalize the termination. She refused any other

7

options, such as a demotion, that he presented to her. Notes by Henry Chapman dated November 21, 2005 p. D000000493, annexed to the Frumkin Aff. as Exh. "4"; Molnar Dep. p. 353:10-24; Deposition of Henry Chapman, dated July 27, 2007, annexed to the Frumkin Aff. as Exh. "5," pp. 58:6-60:3.

(h)   On Wednesday November 30, 2005 Plaintiff arrived at a pre-scheduled 11:00 meeting with Ms. Molnar to supposedly discuss his 2005 Year End Review. Instead, in the presence of Mr. Chapman, Ms. Molnar read a less than one minute prepared statement that ended with "I've decided to terminate your employment... and my decision is final."  When he asked why, Ms. Molnar replied "for not taking me where I want to go."  She then abruptly left the room leaving him alone with Mr. Chapman. Molnar's Termination Notes D000000024, Annexed to Frumkin Aff. as Exh "6"; Molnar Dep. pp. 361:8-363:18; Moscarello Dep. p. 187:4 - 188:13.

(i)   Plaintiff was never shown his November 2005 Review. Molnar Dep. p. 323:21-24.

(j)   Ms. Molar failed to mention to Mr. Chapman anything about Plaintiff's wife's cancer, chemotherapy, hospitalization, or family leave request until after he was fired.  Chapman Dep., p. 73:13-75:25.

34.   Disputed

(a)   See ¶ 33.

(b)   On Mr. Chapman's notes on his meeting with Ms. Molnar to start elimination process, Ms. Molnar relates to him that Plaintiff  is a "negative influence on

8

group dynamics" Frumkin Aff., Exh "4," D000000493.

(c)     Just two months previously, Ms. Molnar rated Plaintiff as "on target" in the Teamwork/Collaboration Category.  Molnar Decl., Exh "W."

(d)     On Client Service/Business Development Ms. Molnar rates Plaintiff as on target. *Id*.  She concurs with this in her deposition. Molnar Dep. p. 320:6-11.

(e)     Achievement Motivation was rated not on target but when asked what this meant she said "I don't recall."  Molnar Decl., Exh "W"; Molnar Dep. p. 320:12-15.

(f)     Continuous Learning Motivation rated not on target. Molnar Decl., Exh "W." Ms. Molnar falsely testified that Plaintiff never asked to attend any seminars or educational programs. Molnar Dep. pp. 320:24-321:11.  Rohrman Dep. pp. 102:17-103:6, 104:25-105,  113:23; Moscarello Dep. pp. 125:18-127: 2.

35.     Disputed

(a)     The original plan was to replace Plaintiff's position. Ms. Molnar stated that she "Need[s] a more engaged employee" Frumkin Aff. Exh. "4," D000000493.  Molnar's notes further state: "For me to handle the growing responsibilities of the group I've decided to terminate your employment and go another direction with your position." "My forward plans are hopeful for what the position can do" Frumkin Aff. Exh. "6," D000000024.

(b)     The position was not eliminated, but rather left in the budget until January 1, 2007.  Molnar Dep. p. 364:2-14.

(c)   Plaintiff met with Henry Chapman twice and legal counselor Gerry Cavaluzzi at least three times regarding his termination and resultant damages, clearly putting Defendant on notice of possible legal action. Chapman Dep. pp. 76:16-77:15;  Moscarello Aff. 56; Notes of Henry Chapman, dated December 20, 2005, annexed to Frumkin Aff. as Exh. "7," D000000490.

36.   Disputed

(a)   Ms. Molnar testified that she had no recollection of Plaintiff telling her in or around September 2005 that his wife had to begin an 18 month course of chemotherapy treatments. Molnar Dep. pp. 310:17-21, 311:24 - 312:3.

(b)   Ms. Molnar testified that Plaintiff did not say to her that he's going to need some time off to help his wife as a result of being in chemotherapy. Molnar Dep. p. 312:4-23.

(c)   Ms. Molnar testified that Plaintiff never asked for Family Leave in September 2005.  When asked if she instructed Plaintiff to discuss any medical leave issues with human resources, she definitively replied "He never asked." Molnar Dep. pp. 312:24 - 313:13.

37.   Undisputed.

38.   Undisputed.

39.   Undisputed.

40.   Undisputed.

41.   Undisputed.

42.    Undisputed.

43.    Undisputed.

44.    Undisputed, except that it also focused on his work with the Small Business Plan Submittal.  Molnar Decl. Exh. "I."

45.    Undisputed.

46.    Undisputed.

47.    Undisputed.

48.    Undisputed.

49.    Disputed.  The Compliance Manager resigned in August 2000, 8 months previously. Moscarello Aff., ¶ 7.

50.    Undisputed.

51.    Undisputed.

52.    Undisputed.

53.    Undisputed, except Ms. Molnar wrote in the narrative section that "Time did not necessarily allow him to personally learn overhead costing and pricing support or to tap into the area of improving company compliance performance" Yet rather than leaving it blank she still rated him a "3" in this category. Molnar Exh. "C," 2001 Employee Partnership Plan & Evaluation, p. D000000115-16.

54.    Undisputed.

55.    Undisputed, except Ms. Molnar also wrote: "He takes on a technical and responsible role and has been supportive of the group goals and me." *Id*., p. D000000116.

56.    Undisputed.

57.     Undisputed.

58.     Undisputed.

59.     Undisputed.

60.     Undisputed.

61.     Undisputed.

62.     Undisputed, except that even though the backlog of past Incurred Cost Projects had been completed, each current year still had to be completed.  Moscarello Aff ¶ 11.

63.     Undisputed.

64.     Undisputed.

65.     Undisputed.

66.     Disputed.  Mr. Rohrman further replied "no" when asked if that meant going out and getting his own assignments. In addition he testified that, although the company expects you to take on work and try to improve processes, he's "never gone out and solicited work from another group." Rohrman Dep. p. 78:22 - 79:14. Also, when asked if Ms. Molnar ever told you that you should get your own projects without her, he responded "No. I don't know how you would do that. No." Rohrman Dep. p. 139:4-10.

67.     Undisputed.

68.     Undisputed.

69.     Undisputed.

70.     Undisputed.

71.     Undisputed.

72.     Undisputed.

73.     Undisputed.

74.     Undisputed.

75.     Undisputed.

76.     Disputed: Mr. Moscarello stated, "I would say it's not quantifiable is a better way [than nebulous] of describing what I meant." Moscarello Dep. pp. 147 - 148:2.

77.     Undisputed.

78.     Undisputed.

79.     Undisputed.

80.     Disputed:  Mr. Moscarello was not questioned as to whether he thought, then or now, that the disparity was "harassment" or "unfair."  Moscarello Dep., p. 129:3-16.

81.     Undisputed that the backlog was complete, however, reports still had to be filed for each current year Moscarello Aff. ¶ 11.

82.     Undisputed.

83.     Undisputed, except that Ms. Molnar also wrote: "Paul did, however, support a few proposal and pricing requests throughout the year. Paul did not get involved with process improvements for NYC, air travel or budgeting through no fault of his own." Molnar Decl., Exh. "E," p. D000000100.

84.     Undisputed

85.     Disputed.  Plaintiff had built relationships outside his "inner group" as evidenced by:

(a)     Mr. Greg Matthews is the Senior Vice President responsible for Federal Programs at Malcolm Pirnie. Moscarello Aff. ¶ 12-15.

(b)     Plaintiff supported Mr. Matthews with Small Business Reporting

responsibilities twice yearly and helped with other federal matters throughout the year. Plaintiff was considered a valuable resource by senior members of Mr. Matthew's staff. *Id.*, E-mail from Moscarello to Rohrman, with attached letter, dated November 1, 2002, Annexed to Moscarello Aff. as Exh. "1," p. D000002390-91.

(c)     These reports were submitted successfully and on time in each year of Plaintiff's employment. Plaintiff worked with Mr. Matthews to improve the company's standing with the Small Business Administration, turning a program that had been deficient into one that was "Highly Successful." Rohrman Dep. pp. 72:16 - 75:18; Moscarello Aff. ¶¶ 12-14; Exh. "1."

(d)     Plaintiff continued his work with Federal Managers outside his "inner group" until he was terminated.   Moscarello Aff. ¶¶ 14-15. Email from Paul Moscarello to Susan Molnar, dated November 14, 2005, annexed to Moscarello Aff. as Exh. "2," p. D000002328.

86.     Undisputed.

87.     Undisputed.

88.     Disputed:

(a)     The purpose of this meeting was more than to "discuss these issues." Moscarello Aff. ¶¶ 30-35; Moscarello Dep. pp. 134:7 - 136:7.

(b)     Ms. Molnar "couldn't recall" a meeting with a representative from Human Resources regarding this issue early in her deposition. Molnar Dep. p. 235:11 -14.

(c)     Later in Ms. Molnar's testimony, upon being confronted with Henry Chapman's notes from that meeting, she conceded there may have been a meeting but remembered little about it. Molnar Dep. pp. 374 - 381:17.

89.     Undisputed.

90.     Undisputed.

91.     Undisputed, except the meeting was by Plaintiff's initiative. Moscarello Dep. pp. 133:17 - 134:4; Moscarello Aff. ¶ 36.

92.     Undisputed.

93.     Disputed:

(a)     Rather than a "counseling session," the meeting was an example of Ms. Molnar's harassment of Plaintiff. Moscarello Aff, ¶¶ 30-36.

(b)     Ms. Molnar recalled little if anything what was said at the "counseling session" Molnar Dep. pp. 374:8 - 381:17.

(c)     Mr. Chapman "cannot recall" if any specific project was mentioned at this counseling session. Chapman Dep. p. 42:5-9.

94.     Undisputed.

95.     Undisputed.

96.     Disputed: Ms. Molnar only provided Plaintiff with Cost Impact Proposal References Molnar Decl., Exh. "P," pp. D000001300-1322. Plaintiff, using his knowledge of the subject, researched and obtained all other appropriate FAR documents himself, without any input from Ms. Molnar. *Id.*, pp. D000001274-1299; Moscarello Aff. ¶ 27.

97.     Disputed: The request was not an "update" but the beginning of Plaintiff's having been re-assigned to the Cost Impact Statement Project per agreement at the "counseling session" between Mr. Chapman, Ms. Molnar and Plaintiff.

(a)     Plaintiff had already been removed from this project by Ms. Molnar prior to this June 28, 2004 date: "I took you off the project [prior to date of meeting]."  Molnar Decl., Exh. "O," Chapman's Notes, p. D000000504.

(b)     "Monday, June 14 at approximately 8:30 am I advised Paul to stop work on the Cost Impact Project and to continue with his other projects at this time." Molnar Notes annexed to the Frumkin Aff. as Exh. "8," p. D000000049.

(c)     Plaintiff had been removed from the project by Ms. Molnar only two weeks into the effort when in fact Ms. Molnar had been informed by Plaintiff from the start that the effort would most certainly require six to eight weeks to complete.  Moscarello ¶¶ 23-30.

(d)     Ms. Molnar acknowledged taking him off the project. Molnar Dep. p. 234:8-10.

(e)     Plaintiff informed Mr. Chapman that the counseling session was intentionally orchestrated by Ms. Molnar as a form of discrimination, harassment and humiliation. Moscarello Aff. ¶ 36, Moscarello Dep. pp. 133:17 - 136:25.

98.     Disputed.  Plaintiff's "difficulty" in the e-mail referred to a mathematical concept that Ms. Molnar did not grasp. Moscarello Aff. ¶ 40.

99.     Undisputed, except that Plaintiff was mostly researching requirements and only in the developmental stage of completing the assignment (2 weeks out of an estimated 8 weeks) when

he had been removed from the assignment. Molnar Notes, Frumkin Aff. Exh. "7," pp. D000000049, Moscarello Aff. ¶¶ 25-37.

100.    Undisputed.

101.    Undisputed, except:

      (a)    This was the first day that Plaintiff had been reassigned to the project since the "counseling session," after he had been removed from project two weeks earlier. Moscarello Aff. ¶¶ 25-40.

      (b)    Plaintiff had been in developmental research phase of the project when he had been removed from it previously. *Id.*

      (c)    Plaintiff in no way suggested that these notes were in any way complete or in deliverable form. *Id.*

      (d)    Ms. Molnar's "corrections and edits" were entirely unnecessary and purely orchestrated to harass Plaintiff. *Id.*

      (e)    Plaintiff informed Ms. Molnar that the project was still going to take six weeks to complete. *Id.*

102.    Disputed, see ¶ 101.

103.    Disputed, see ¶ 101.

104.    Undisputed.

105.    Disputed: Plaintiff submitted a document, but did not believe it was the final version. Moscarello Aff. ¶¶ 25-40.  Also, in ¶ 108, *infra*, Defendant refers to this submission as a "draft."

106.    Disputed:   Plaintiff's work was not deficient and the edits and corrections were unnecessary and meant to undermine Plaintiff's performance. Moscarello Aff. ¶¶ 25-40.

107.    Disputed: See ¶ 106.

108.    Disputed:  The draft was not inadequate. Moscarello Aff. ¶¶ 25-40.

109.    Disputed:  See Moscarello Aff. ¶¶ 25-40.

110.    Disputed: See Moscarello Aff. ¶¶ 25-40.

111.    Disputed: See Moscarello Aff. ¶¶ 25-40.

112.    Undisputed, except see Moscarello Aff. ¶¶ 25-40.

113.    Disputed, Ms. Molnar's intent was the continuation of disparate discriminatory treatment and was upset because she never wanted Plaintiff re-assigned to the project, which occurred only as a result of the meeting with Henry Chapman. Plaintiff was instructed to meet with Ms. Molnar every day for six weeks and that is exactly what he did. Moscarello Aff. ¶¶ 25-40. Moreover, Ms. Molnar further noted: "Paul said he liked to do the kind of work he had to do on the Cost Impact Proposal even though it was a tough start (my words not his). I told him I would definitely keep that in mind and would give him a project along similar parameters," Molnar Decl., Exh. "V," p. D000000034.

114.    Disputed.  See Moscarello Aff. ¶¶ 25-40.

115.    Disputed, Ms. Molnar testified and noted that the report/project was not finalized.

(a)    In response to "When did you take him off the project?" Ms Molnar responded "When I decided I didn't need the report anymore" Molnar Dep. pp. 234:8-21; Molnar Notes, Frumkin Aff. Exh. "7," p. D000000049.

(b)    "So it turned out I didn't need it anymore...so I went forward without the report" Molnar Dep. p. 235:6-10.  "We don't do it anymore. We didn't do it." Molnar Dep. p 246:9 - 247:7.

18

(c)    "...Paul took the project [Cost Impact Proposal] to an acceptable interim completion level," Molnar Decl., Exh. "F," p.D000000084.

(d)    Question: "But wasn't that the project where you told him to go off it because you really didn't need him to do it?"  Answer:  "Yes." Question: "Did he go back to do it later?" Answer: "No." Molnar Dep. p. 247:8-25.

116.    Disputed: The document was not included in Plaintiff's 2004 mid-year review.  It was written afterwards by Ms. Molnar, refers to the review in the past tense and was part of her undisclosed file she kept regarding Plaintiff (unlike other employees) which was later added to his personnel folder without Plaintiff's knowledge.  Molnar Decl. Exh. "V,"; Molnar Dep. pp. 238:18 - 239:24, 386:12-22.

117.    Undisputed.

118.    Undisputed, except:

(a)    Throughout 2004, Ms. Molnar used her managerial position to re-assign projects previously performed by Plaintiff and kept new projects from being evenly distributed as she deliberately sought to minimize Plaintiff's importance to the company. Moscarello Aff. ¶¶ 25-40, 48, 50.

(b)    New proposal work was unevenly distributed despite Plaintiff's request to Ms. Molnar to work on more such assignments. Plaintiff assigned himself a low rating on his Review in this category in order to take issue of this. Moscarello Dep. pp. 151:15 - 152:5; Molnar Decl. Exh. "V."

(c)    Plaintiff relates that he reduced his ratings on other categories because he was trying to placate Ms. Molnar, who stated that too great a disparity

between their evaluation would create a problem with the review committee, and to stop her harassment of him. Moscarello Dep. p. 152:8-21; Moscarello Aff. ¶ 42.

119.   Undisputed.

120.   Undisputed, except:

   (a)   Plaintiff related that Ms. Molnar was not providing him with a fair and accurate evaluation. Moscarello Dep. pp. 153 - 155:6.

   (b)   Ms. Molnar's narration on the 2004 Employee Partnership Plan & Evaluation is unfairly critical and wholly subjective, minimizing any positive contribution by Plaintiff. For example:

      i)   Plaintiff was "dedicated to a priority commitment" by Ms. Molnar, the Newtown Creek Invoice Analysis, for two months. "Because of its complexity...it required dedicated extensive detail review ...to make it relatable to NYC DEP."  Yet Ms. Molnar's acknowledgment was limited to: "This project seems to be moving along at an acceptable level at the moment."   Molnar Decl. Exh. "F," p. D000000084

      ii)   Regarding Federal Contracts, Ms. Molnar wrote: "Nothing was performed this year by Paul with regard to Federal Contracts..." except she followed it with, "however inquires were responded to and reconciliations were performed..." Molnar Decl. Exh. "F."

iii)  Ms Molnar wrote "Paul's involvement in proposal support was minimal this year." However, Ms. Molnar was the person who failed to assign him to more proposals. Rohrman Dep. p. 78:10 - 79:14; Molnar Decl. Exh. "F."

iv)  *See* ¶¶ 93-115 re: Ms. Molnar's statements about the Cost Impact Proposal.

121.  Undisputed.

122.  Undisputed.

123.  Undisputed.

124.  Undisputed

125.  Undisputed.

126.  Undisputed

127.  Undisputed, except on item #6, "Miscellaneous," Ms. Molnar rated Plaintiff as "Close to Target" but she testified that Plaintiff was on schedule. Molnar Dep. pp. 319:24 - 320:5.

128.  Undisputed, except:

(a)  Plaintiff was rated "On Target" in the Teamwork/Collaboration Critical Behavior, yet less than two months later, in order to fire Plaintiff, she told Henry Chapman that Plaintiff was a "negative influence on group dynamics." Molnar Decl. Exh. "W,"; Frumkin Aff., Exh. "6," Notes of Ms. Molnar and Henry Chapman Termination Meeting November 21, 2005.

(b)  Ms. Molnar could not provide specific basis for the allegations regarding Mr. Moscarello's purported teamwork issues in 2005, or the basis for the Not on

21

Target rating for Plaintiff's Achievement/Motivation. Molnar Dep. pp. 356:24 - 357:13, 320:12-15.

    (c)    For Process Orientation/Improvement, Ms. Molnar incongruously rated Plaintiff as "Not on Target" yet rated Incurred Cost Reporting (Parallel Reports) as "On Target." The Parallel Reports (Mock) were also highly demonstrative of Continuous Learning and Innovation, which again she undeservedly rated as "Not on Target." Mosc Aff. ¶ 51; Rohrman Dep. pp. 118:12 - 123:7.

129.    Undisputed, except:

    (a)    When asked if she instructed Plaintiff to discuss any medical leave issues with human resources, Ms. Molnar replied "He never asked." Molnar Dep. pp. 312:24 - 313:13.

    (b)    Ms. Molnar testified that she had no recollection of Plaintiff telling her in or around September 2005 that his wife had to begin an 18 month course of chemotherapy treatments. Molnar Dep. pp. 310:17-21, 311:24 - 312:3.

    (c)    Ms. Molnar testified that Plaintiff did not say to her that he's going to need some time off to help his wife as a result of being in chemotherapy. Molnar Dep. p. 312:9-13.

130.    Undisputed, except no leave was taken in the interim and Ms. Molnar cannot claim to have been cognizant of plaintiff's statements at the time she prepared the evaluation. *See* ¶ 129.

131.    Undisputed.

132.    Disputed: The 2005 Employee Partnership Plan and Evaluation does not indicate that any rating below 3 is considered not acceptable. Molnar Decl., Exh. "F."

133.    Undisputed.

134.    Disputed:   It was a merit increase. Molnar Decl., Exh. "X."

135.    Undisputed.

136.    Undisputed.

137.    Undisputed.

138.    Undisputed.

139.    Undisputed.

140.    Undisputed.

141.    Undisputed.

142.    Disputed.  Ms. Molnar's decision to terminate was based on unlawful discriminatory and retaliatory animus, because of the recent disclosure regarding the critical nature of Mr. Moscarello's wife's health and his definite need for family leave, and was an act of interference with his request for that leave.

> (a)    On Friday, November 11, 2005, Ms. Molnar authored and signed, and had her boss sign, a performance evaluation for Mr. Moscarello that stated his performance had improved.  Molnar Decl. Exh. "G."
>
> (b)    On Friday, November 11, 2005, Ms. Molnar authored and signed, and had her boss sign, a recommendation that Plaintiff receive a merit increase. Molnar Decl. Exh. "X."

(c)    On Monday, November, 14 2005, Plaintiff informed Ms. Molnar's of his definite need for Family Medical Leave to care for his wife who had become incapacitated a day earlier. Molnar Dep. p. 340:9 - 342:21; Moscarello Dep., pp. 173:5 - 177:20

(d)    Ms. Molar failed to inform Mr. Chapman about Plaintiff's wife's cancer, chemotherapy, ER visit, hospitalization, or family leave request until after he was fired. Chapman Dep. pp. 73:13 - 75:25.

(e)    Ms. Molnar was aware of Defendant's formalized procedures for employee evaluation and Performance Improvement Plan, but never chose to avail herself of them.  Molnar Dep. pp. 252:19 - 253:14.

143.    Undisputed.

144.    Undisputed.

145.    Undisputed.

146.    Undisputed.

147.    Undisputed.

148.    Undisputed.

149.    Disputed.  Ms. Molnar claimed that Mr. Rohrman allegedly "volunteered" to her, for no apparent reason that Mr. Moscarello's wife had "brain tumor or something." Mr. Rohrman testified it would be out of character for him to have brought the subject up. "That's why I say, I don't recall saying it" Mr. Rohrman answered, "I don't think I did" when asked to clarify his "I don't recall" answer.  Rohrman Dep. pp. 18:22 - 20:17, 21:10-23, 37:13 - 38:21.

150.    Undisputed.

151.   Undisputed.

152.   Disputed: "growth in tumor" was not the subject of a question in the portion of the transcript cited by Defendant. Molnar Dep. p. 183:2-14.

153.   Undisputed.

154.   Undisputed, except the term "extremely negative" was not a term utilized by Plaintiff.

155.   Undisputed.

156.   Undisputed, except Ms. Molnar testified that she had no recollection of that statement. Molnar Dep. pp. 310:17-21, 311:24 - 312:3.

157.   Undisputed.

158.   Undisputed, except:

    (a)   When asked if she instructed Plaintiff to discuss any medical leave issues with human resources, Ms. Molnar replied, "He never asked." Molnar Dep. pp. 312:24 - 313:13.

    (b)   Ms. Molnar testified that she had no recollection of Plaintiff telling her in or around September 2005 that his wife had to begin an 18 month course of chemotherapy treatments. Molnar Dep. pp. 310:17-21, p. 311:24 - 312:3.

    (c)   Ms. Molnar testified that Plaintiff did not say to her that he's going to need some time off to help his wife as a result of being in chemotherapy. Molnar Dep. p. 312:4-23.

159.   Undisputed.

160.   Undisputed.

161.   Undisputed.

162.    Undisputed.

163.    Undisputed.

164.    Undisputed.

165.    Disputed, *see* ¶ 142.

166.    Undisputed.

167.    Undisputed.

168.    Undisputed.

169.    Undisputed.

170.    Undisputed.

171.    Undisputed.

172.    Undisputed.

173.    Undisputed.

174.    Undisputed.

175.    Undisputed.

176.    Undisputed.

177.    Undisputed.

178.    Undisputed.

179.    Undisputed.

180.    Undisputed.

181.    Undisputed.

182.    Undisputed.

183.    Undisputed.

184.    Disputed.  Ms. Molnar continually engaged in adverse action against Ms. Sulsona, including forcing her to work overtime on weekends without pay.  Moscarello Aff.  ¶ 55.

185.    Undisputed.

186.    Undisputed:

187.    Disputed.  See Molnar Decl., Exh. "Y," p. D000000061.

188.    Undisputed.

189.    Disputed.  Plaintiff took off the afternoon of November 29, 2005 to accompany his wife for testing regarding her disability.  Moscarello Dep. pp. 181:11 - 185:07.

**Additional Material Facts For Which There is a Genuine Issue to Be Tried**

190.    Mr. Moscarello was hired as a Compliance/Senior Cost Accountant by Malcolm Pirnie in April of 2000.  Molnar Decl. Exh. "A."

191.    Mr. Moscarello brought to the company an MBA in International Finance and fourteen years of governmental regulatory work experience.  Moscarello Dep. pp. 11:12-21.

192.    For over five years, Mr. Moscarello was a conscientious and dependable employee for Defendant.  Moscarello Aff. ¶ 5.

193.    Initially hired as a temporary employee, Mr. Moscarello's job duties included assisting Malcolm Pirnie with its long history of problems with conforming to governmental regulatory standards as required by the Federal Acquisition Regulations ("FAR").  Moscarello Aff. ¶ 2.

194.    At the time Mr. Moscarello was hired, Malcolm Pirnie was 7 years in arrears in developing acceptable overhead rates and was in danger of losing its ability to contract with the federal government, which represented a substantial portion of its business. Rohrman Dep. pp. 56:5-

59:10, 62:15-20.

195.    In a short amount of time after being hired, Mr. Moscarello: 1) developed the methodology and electronic programs necessary to bring Malcolm Pirnie in conformance with federal regulations and reestablish good faith communication with the federal government; 2) gathered necessary data in order to create a report supporting allowable overhead rates for each individual fiscal year; 3) analyzed thousands of company expense reports related to travel in order to discover and resolve instances of unacceptable expenses in accordance with FAR; and 4) developed an Incurred Cost Analysis Report, and created a Joint Travel Regulations Report. Moscarello Aff. ¶¶ 2-5.

196.    Mr. Moscarello's diligence and hard work led to Malcolm Pirnie's successful governmental audit and the continuation of its prosperous business relationship with the federal government.  Mr. Moscarello's success at Malcolm Pirnie continued and his services were still needed.  As a result, he was offered a full time position in August 2000.  Molnar Dep. p. 62; Moscarello Aff. ¶¶ 6-8.

197.    In April 2001, Ms. Molnar rated Moscarello "4" out of "5," in most categories, stating he was "a valuable member of the group."  Molnar Decl. Exh. "I," p. D000000119-122.

198.    In conjunction with his overall rating of "4," Ms. Molnar recommended a 4.1% merit increase in salary.  Molnar Decl. Exh. "B."

199.    In November 2001, he received "5" out of "5" in two of three categories, with an overall performance rating of "4.6," and positive written remarks from Ms. Molnar.  Molnar Decl. Exh. "C."

200.    In conjunction with his "4.6" performance rating in the preceding evaluation, Mr.

Moscarello received 2.9% merit raise in April 2002.  Molnar Decl. Exh. "H."

201.    In November 2002, Ms. Molnar rated Mr. Moscarello a 3.5, which, although a lower rating than the previous year, resulted in a greater percentage salary increase, 3.57%, based on merit. Molnar Decl. Exhs. "D," "H."

202.    In November 2003, Mr. Moscarello received a 3.2 rating from Ms. Molnar and a 2.34% merit increase.  Molnar Decl. Exhs. "E," "H."

203.    When questioned by Mr. Moscarello, Ms. Molnar stated on more than one occasion that Mr. Moscarello was at the higher end of his salary range and that those employees receive smaller increases because of the salary cap.  Moscarello Aff. ¶ 10.

204.    From April 15, 2000 until October 2003, Mr. Moscarello was regarded as a good to excellent employee at Malcolm Pirnie, until his supervisor, Susan Molnar, learned that Mr. Moscarello's wife Joanne had a serious and debilitating illness diagnosed as Oligdendroglioma (cancerous brain tumor).  Molnar Decl. Exhs. "B" through "D," "H," "I;"  Moscarello Dep., pp. 46:13-47:7.

205.    Mrs. Moscarello was diagnosed with cancer of the brain in 1995.  She is permanently disabled and has been unable to work since 1998 due to symptoms such as recurring daily seizures, severe headaches, partial paralysis, and dizziness. She is unable to perform such major life activities as walking, seeing, hearing, speaking, working, caring for herself, thinking, concentrating, interacting with others, driving, and performing manual tasks. Moscarello Aff. ¶ 17.

206.    Mr. Moscarello disclosed his wife's condition to Ms. Molnar for the first time in October 2003.  Moscarello Dep., pp. 46:13-47:7.

207.    In a private conversation with Ms. Molnar, Mr. Moscarello explained that his wife

had cancer for which she underwent a brain operation in 1995.  Mr. Moscarello told her about the history of his wife's illness, her chemotherapy, and the things she had experienced.  Moscarello Dep., pp. 46:13-49:21.

208.   Ms. Molnar replied, "I did not know that.  That's terrible."  Ms. Molnar further asked him about treatment and whether his wife's condition interfered with his work.  *Id.*

209.   Prior to October 2003, Mr. Moscarello had not disclosed his wife's medical condition to his supervisor.  Before that date, the only employees at Malcolm Pirnie that were aware of Mrs. Moscarello's condition were Mr. Moscarello's coworkers, Jerry Rohrman, and Amparo Sulsona.  Moscarello Dep. pp. 44:25 - 46:12.

210.   Ms. Sulsona, is an administrative assistant.  She does not possess the same title or grade, nor is she tasked with the same or similar responsibilities as Plaintiff.  Moscarello Aff. ¶ 54.

211.   Despite her statement to Mr. Moscarello that she, "did not know" about his wife's disability, Ms. Molnar alleged in her deposition that Mr. Rohrman told her about Mrs. Moscarello's medical condition.  Molnar Dep. pp. 183-184:19, 186:9-11.

212.   Ms. Molnar claimed that she could not remember precisely what he said, but that before she hired Mr. Moscarello, Mr. Rohrman volunteered to her that Mr. Moscarello's wife had a "brain tumor or something."  *Id.*

213.   Mr. Rohrman disputed Ms. Molnar's allegations, testifying that he does not recall ever having said anything to Ms. Molnar regarding Mrs. Moscarello before Mr. Moscarello was hired.  Rohrman Dep., pp. 33:13 - 35:11.

214.   Mr. Rohrman further testified that it would be out of character for him to have brought the subject up, and "That's why I say, I don't recall saying it."  Rohrman Dep., p. 38:1-21.

215.    After Mr. Moscarello informed Ms. Molnar of his wife's disability, Ms. Molnar treated him differently.  Ms. Molnar commenced a campaign of hostility, unjustifiable criticism of Mr. Moscarello's work performance, diminution of his responsibility for duties he successfully completed in the past, and unwarranted negative performance evaluations.  Moscarello Aff. ¶ 18; Molnar Decl., Exhs. "E" through "H," "O," "R" through "X."

216.    The day after his disclosure, Ms. Molnar entered Mr. Moscarello's group work area where she publicly berated and falsely accused him of having a "lack of sensitivity to company documents."Moscarello Aff. ¶ 20.

217.    In or about October 2003, Ms. Molnar began to maintain a computer file of critical notes about Mr. Moscarello. Molnar Dep., pp. 384:20 - 389:13;  Molnar Notes, p. D000000017-20, annexed to the Frumkin Aff. as Exh. "9," Exh. "6," p. D000000025.

218.    Ms. Molnar did not maintain such a file for any of her other subordinates, nor did she share the file with Mr. Moscarello or any other employee of Defendant. Molnar Dep. p. 386:12-22. Moscarello Aff. ¶ 57.

219.    Mr. Moscarello's coworker, Gerry Rohrman testified that he observed that Mr. Moscarello and Ms. Molnar "got along very well for the first several years," but at some point the relationship between them "became more strained," and "not as friendly."  Rohr. p. 84.

220.    Mr. Rohrman further testified that he observed at meetings Ms. Molnar "ignoring a question or ignoring a response to a question by Mr. Moscarello."  *Id.* p. 84, 97.

221.    Mr. Rohrman testified that, unlike her treatment of Plaintiff, Ms. Molnar did not ignore the suggestions of other subordinates in group meetings.  p. 97.

222.    Another source of disparate treatment suffered by Mr. Moscarello was the allegation that his performance was substandard because he relied upon his supervisor to assign tasks and did not seek out new projects on which to work.  Molnar Dep. pp. 141:15 - 143:22, 145:2-146:21, 221:7 - 223:12.

223.    Ms. Molnar never instructed Mr. Moscarello on how he was to create assignments from thin air.  Moscarello Aff. ¶ 22.

224.    Moreover, his coworker, Mr. Rohrman, a twelve-year employee at Defendant Malcolm Pirnie, testified that he, "receives his assignments directly from Ms. Molnar with no expectation that he go out and get his own assignments or solicit work elsewhere."  Rohrman Dep. p. 79.

225.    Mr. Rohrman further testified that "he was never told by Ms. Molnar that he should get his own projects without her and that she never criticized him for not doing so."  Rohrman Depo. p.139.

226.    Mr. Rohrman also was unaware how one would go about doing that.  Rohrman Depo. 139:4-10.

227.    Ms. Molnar's treatment of Mr. Moscarello further deteriorated as she removed him from projects only to thereafter criticize him for not continuing to perform the duties she had withdrawn.  Moscarello Aff. ¶¶ 23-34.

228.    On June 1, 2004, Mr. Moscarello was assigned to the Cost Impact Project by Ms. Molnar.  Moscarello Aff. ¶ 27.

229.    Plaintiff estimated that the project would take at least six to eight weeks to complete. Moscarello Aff. ¶ 29.

230.    Defendant's estimate that the project could be done in two weeks without overtime was unrealistic. *Id.*

231.    Two weeks after his assignment, Mr. Moscarello was removed, having been told by Ms. Molnar that she "didn't need it any more" and that she "decided on a new direction."  Molnar Dep. p. 234:8-21, 235:6-10.

232.    Ms. Molnar's comments in the November 2004 performance evaluation stated that he "took the project to an acceptable interim level."  Molnar Decl. Exh. "F," D00000084.

233.    Approximately two weeks later, Ms. Molnar called Plaintiff into a meeting with Mr. Chapman where she chastised Plaintiff for not completing the project, even though she had removed him from it.  Moscarello Aff. ¶¶ 30-34.

234.    In the meeting, Mr. Moscarello noted that he did not complete the report because Ms. Molnar had taken him off the project.  *Id.*

235.    Mr. Chapman then asked, "How about that Susan?" to which she replied, "That's besides the point."  Moscarello Aff. *Id.*

236.    Ms. Molnar claimed not to recall the meeting with Human Resources and Mr. Moscarello regarding this project.  Molnar Dep. pp. 235:11-14, 239:25 - 241:10.

237.    Mr. Moscarello was then reassigned to the project with a structured monitoring arrangement put in place. Moscarello Aff. ¶ 35.

238.    Ms. Molnar's subsequent interactions with him on the project, however, clearly demonstrated her disdain and animus.  Moscarello Aff. ¶¶ 36-41.

239.    She dismissed his work with unwarranted criticism and used it as a means to threaten his employment.  *Id.*

240.    Ms. Molnar's present claim that Mr. Moscarello's performance on the Cost Impact Proposal was deficient and caused his removal from the project is belied by her notes from August 31, 2004.  D Molnar Aff., Exh. "V," 000000034.

241.    At that time, Ms. Molnar also threatened Mr. Moscarello, telling him his "job was on the line."  Molnar Depo., p. 239:20-24, Molnar Aff., Exh. "V."

242.    Nevertheless, Ms. Molnar did not implement any of the formalized performance improvement programs available at Defendant and of which she was aware.  Molnar Dep., p. 252:19- 253:14.

243. Ms. Molnar also excluded Mr. Moscarello from meeting with outside parties on matters relevant to his assignments, at one point responding that he was not invited "because there were not enough chairs."  Moscarello Aff. ¶¶ 43-49

244.    Plaintiff was relieved of projects and denied assignments and the opportunity to attend seminars to permit his advancement in the company.  *Id*.

245.    Mr. Moscarello's 2004 annual review, issued in November 2004, was his lowest while employed by Defendant. Molnar Decl. Exh. "F."

246.    Having suffered over one year of Ms. Molnar's harassment and disparate treatment, Mr. Moscarello sought to avoid confrontation by lowering his self-evaluation in the review. Moscarello Dep. pp. 151:2 - 152:21; Moscarello Aff. ¶ 42.

247.    Mr. Moscarello hoped this would placate Ms. Molnar as she had informed him that too great a disparity between their assessments of his performance would create a problem with the review committee.  *Id*.

34

248.    As a result of his diminished review, Mr. Moscarello received no merit increase for his 2004 performance. Molnar Decl. Exh. "H."

249.    On Friday, September 16, 2005, Mrs. Moscarello's physicians advised her to begin an 18 month course of rigorous chemotherapy treatments. Moscarello Dep. pp. 170:23 - 172:24.

250.    On Monday, September 19, 2005, Mr. Moscarello had a discussion with Ms. Molnar about his wife's condition.  Mr. Moscarello stated that his wife would at some point need a daily protocol of chemotherapy for a minimum of 18 months.  *Id.*

251.    In this conversation he told her that he might need to take intermittent FMLA leave to care for his wife, but hoped that he would not have to do so.  *Id.*

252.    Ms. Molnar said nothing in response.  *Id.*

253.    Rather, she stared at him blankly in total disregard for his family's situation, and moved on to discuss business.  *Id.*

254.    Ms. Molnar apparently did not appreciate the possibility that Mr. Moscarello may require the use of protected leave in September 2005, denying recollection that Mr. Moscarello asked for time off to help his wife as a result of chemotherapy. *Id.*;  Molnar. Dep.  p. 312:4-13.

255.    Ms. Molnar testified that her recollection of the conversation was limited to Mr. Moscarello, "probably asking to take the next day off [for a] checkup."  Molnar p. 312:14-23.

256.    Despite his concerns, Mr. Moscarello did not need to avail himself of the use of protected leave in September and October and the matter was not addressed further with Ms. Molnar during those months.  Moscarello Aff. ¶ 52.

257.    In October 2005, Ms. Molnar and Mr. Moscarello met to have preliminary discussions regarding his year end evaluation, which would occur in November 2005.  Moscarello

Aff. ¶ 53.

258.    Ms. Molnar and Mr. Moscarello agreed that all of Mr. Moscarello's work was up to date and satisfactory.  Moscarello Aff. ¶ 53;  Molnar Decl. Exh. "W."

259.    On Friday, November 11, 2005, Ms. Molnar prepared and signed Mr. Moscarello's annual performance evaluation for 2005.  Molnar Decl. Exh. "G."

260.    This evaluation, which also was approved and signed by her superior, Vice President Bob Belitz, was never provided to Mr. Moscarello.  *Id*.

261.    In the evaluation, Ms. Molnar wrote that "Paul has improved his performance over the last year."  Molnar Dep. Exh. "G."

262.    Ms. Molnar made no indication that Mr. Moscarello was soon to be fired.  Rather, the evaluation referenced expectations for Mr. Moscarello "in the year to come..."  *Id*.

263.    Furthermore, in recognition of his improved performance, Ms. Molnar recommended, and Mr. Belitz approved, a merit increase for Mr. Moscarello effective January 14, 2006.  Molnar Decl. Exh. "X," p. D000000478.

264.    On the following Monday, November 14, 2005, Mr. Moscarello informed Ms. Molnar by telephone that he would be late because he had spent the previous evening with his wife in the hospital.  Molnar Dep. p. 340:9 - 342:21; Moscarello Dep., pp.  173:5 - 177:20

265.    Immediately upon his arrival that day, he disclosed to Ms. Molnar that his wife went to the emergency room twice on Sunday, the second time semi-conscious, via ambulance.  *Id*.

266.    He informed Ms. Molnar that he definitely would need to take family medical leave because further testing was being done to see if his wife's cancer had spread from her brain to her spine.  *Id*.

267.    Ms. Molnar testified that during the week following this conversation, she decided to terminate his employment.  Molnar Dep. pp. 316:14 - 317:5; 323:19 -  324:7; 345:15 - 350:10.

268.    As a result of Mr. Moscarello's request on November 14, 2005, Ms. Molnar refused to speak to him for the following two weeks.  Moscarello Aff. ¶ 58.

269.    On November 21, 2005, Ms. Molnar met with Henry Chapman to process Mr. Moscarello's termination.  Ms. Molnar refused other options presented by Mr. Chapman, such as demotion.  Frumkin Aff., Exh. "4;" Molnar Dep. p. 350:10-24.

270.    She was resolute that Mr. Moscarello be terminated.  *Id*.

271.    In her discussions with Mr. Chapman, Ms. Molnar did not inform Mr. Chapman of Mr. Moscarello's request for family medical leave or that his wife was disabled.  Chapman Dep. pp. 72:13-75:25.

272.    On November 29, 2005, Mr. Moscarello took the afternoon off from work to take his wife to the hospital for treatment and tests.  Moscarello Dep. pp. 181:11 - 185:07.

273.    Mr. Moscarello spent the afternoon and most of the evening at Sloan Kettering Memorial Hospital with his wife.  *Id*.

274.    On November 30, 2005, Mr. Moscarello returned to work.  *Id*.

275.    At 11:00 a.m. there was a meeting scheduled between he and Ms. Molnar to discuss his annual performance review.  Moscarello Dep. pp. 187:6 - 188:21

276.    Upon his arrival, Mr. Moscarello noted the presence of Henry Chapman.  *Id*.

277.    Ms. Molnar read a one minute statement, wherein she concluded, "I've decided to terminate your employment ... and my decision is final."  Ms. Molnar abruptly left the meeting. Molnar Notes, Frumkin Aff., Exh. "6." p. D0000000024;  Moscarello Aff. ¶ 59.

278.    She did not show Mr. Moscarello his 2005 performance review, nor the recommendation that he receive a salary increase.  Molnar Dep. p. 323:21-24.

279.    Those documents were not revealed until discovery in the instant action.  *Id*.

280.    Plaintiff's termination was not the result of an elimination of a position. Ms. Molnar's notes from the termination indicate that she "needed a more engaged employee," and that her "forward plans are hopeful for what the position can do."  D000000024, 33.

281.    Mr. Moscarello's position was left in the budget until January 1, 2007. Molnar Dep. pp. 363:19 - 364:14.

282.    Defendant was fully cognizant of the possibility of legal action by Mr. Moscarello, for he met with Employee Relations Manager Henry Chapman twice, and Defendant's legal counselor, Gerry Cavaluzzi, at least three times after his termination regarding his claims and damages.  Moscarello Aff. ¶ 56.

Dated: White Plains, New York                    Respectfully submitted,
       March 14, 2008

                                   **SAPIR & FRUMKIN LLP**


                 By:    /s/ William D. Frumkin
                          William D. Frumkin (WF 2173)
                          Daniel T. Driesen (DD 3201)
                          399 Knollwood Road, Suite 310
                          White Plains, New York 10603
                          (914) 328-0366
                          Attorneys for Plaintiff

F:\APPLICAT\WP\Moscarello\Summary Judgment\Rule 56.1 Statement.03.11.08.ECF.wpd\rlh

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK            )
COUNTY OF WESTCHESTER        )ss.:

RACHEL L. HORTON, being duly sworn, deposes and states as follows:

That deponent is not a party to this action, is over 18 years of age and resides at Hopewell Junction, New York.   On the 14th day of March, 2008, your deponent served the within PLAINTIFF'S STATEMENT PURSUANT TO LOCAL CIVIL RULE 56.1 upon:

> James E. Kellett, Esq.
> Crowell & Moring LLP
> 153 E. 53rd Street, 31st Floor
> New York, NY 10022-4611

the address designated by said attorneys for that purpose, by depositing a true copy of same enclosed in a post-paid wrapper, by first class mail, in an official depository under the exclusive care and custody of the United States Postal Service within New York State, and by e-mail transmission.

Rachel L. Horton

Sworn to before me this
14th day of March, 2008

Notary Public

WILLIAM D. FRUMKIN
Notary Public, State of New York
No. 02FR4892219
Qualified in Westchester County
Commission Expires April 13,